## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**ANNE M. POIRIER,**

    **Plaintiff,**    **CIVIL ACTION NO. 10-CV-11841**

  **vs.**

          **DISTRICT JUDGE GERALD E. ROSEN**

**COMMISSIONER OF**    **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

    **Defendant.**
_____/

### REPORT AND RECOMMENDATION

**I.**  **RECOMMENDATION:**  This Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 14) be DENIED, Defendant's Motion For Summary Judgment (docket no. 16) be GRANTED and the instant Complaint dismissed.

              ***

**II.**  **PROCEDURAL HISTORY:**

    Plaintiff filed an application for disability and Disability Insurance Benefits and Supplemental Security Income on February 27, 2008 alleging that she had been disabled since January 1, 2008 due to multiple endocrine problems, Addison's disease, hypoparathyroidism, fibromyalgia, degenerative joint disease, osteopenia and endometriosis.  (TR 99-111, 139).  The Social Security Administration denied benefits.  (TR 40-49).  Administrative Law Judge Roy L. Roulhac (ALJ) held a de novo hearing on June 1, 2009 and found that the claimant was not entitled to a period of disability, Disability Insurance Benefits or Supplemental Security Income because she was not under a disability within the meaning of the Social Security Act at any time through the date of the ALJ's July 29, 2009 decision.  (TR 8-18, 21).  The Appeals Council declined to review the

ALJ's decision and Plaintiff commenced the instant action for judicial review. (TR 1-4). The parties filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

## III.    TESTIMONY AND RECORD EVIDENCE

Plaintiff was 25 years old on the date of the hearing. (TR 26). Plaintiff has a high school education and vocational training as a medical assistant. (TR 26).   Plaintiff has past work experience in 2001 running a service desk where she operated a cash register and handled customer complaints. The job required lifting up to forty pounds. (TR 27). In 2002 Plaintiff worked for a bank where she was the head teller trainer and the job required standing. (TR 27-28). Plaintiff testified that she can no longer work because her electrolytes are always out of balance which makes her tired and her hypoparathyroidism and Addison's disease wear her out. She described that she sometimes feels nauseous. At least once a month she feels as if she has the flu when she has vomiting and cannot get out of bed. (TR 30). When that occurs she uses an emergency injection of Solu-Cortef and if that is not effective she goes to the hospital. (TR 30).

Plaintiff lives with her mother and brother. (TR 26). She uses a cane to get around her house, but she is still waiting for a prescription for a "proper cane." (TR 26). Plaintiff testified that due to pain, she sometimes cannot get out of bed, wear regular clothes or shower. Plaintiff described pain in her joints and fibromyalgia that makes her whole body hurt "like a bruise with a sunburn on top of it." (TR 34). Plaintiff testified that she takes Lyrica, which helps but does not resolve everything. (TR 34). Plaintiff testified that sometimes her medications upset her stomach, she is losing her hair and the Lyrica makes her tired. (TR 36). On October 10, 2008, Tae-Hwa Chun, M.D., identified Plaintiff's medication regime as Cortef, Florinef, calcitrol, calcium, methadone and Lyrica. (TR 237).

2

Plaintiff testified that she can lift about twenty pounds, but "not for very long," stand about fifteen minutes and walk one block before needing to rest. (TR 34-35). She testified that she cannot sit in the same position for more than thirty minutes. She also testified that she can sit in the same position for fifteen minutes before she has to move. (TR 35). She testified that if her calcium "goes high" she cannot stand up at all. (TR 35).

On a "good day" Plaintiff is able to feed her cat, make a sandwich, wash dishes sometimes, except that she drops dishes, clean the toilet, fold the laundry (but she cannot carry a whole load), and vacuum unless her hands are shaky or she is "not very strong that day." (TR 35-36).

The earliest medical records before the ALJ were from December 2006 from Dr. Chate Wansom, who prescribed Plaintiff's medications through February 2008. (TR 197-218). In February 2007 Plaintiff reported to the emergency room for symptoms associated with low calcium. Jeffery Trager, D.O., diagnosed Plaintiff with hypocalcemia with carpopedal spasm. (TR 183-84). Todd March, D.O., reported that Plaintiff had "hypocalcemia secondary to medication non-compliance," hypoparathyroidism, Addison's disease and a history of endometriosis. (TR 187).

Plaintiff was first examined by R.S. Henderson, D.O., on February 12, 2008. (TR 219-25, 236, 268-76). Dr. Henderson concluded that Plaintiff was "clinically consistent with fibromyalgia, history of Addison's disease, and also, from a physical exam standpoint, connective tissue disorder." (TR 220). Further medical evidence is set forth below in the Analysis.

The Vocational Expert (VE) testified that Plaintiff's past work as a customer service clerk and a bank teller were both light exertion and semi-skilled. (TR 37). The ALJ asked the VE to consider a person of Plaintiff's vocational profile who can perform sedentary work lifting not more than ten pounds, sitting six hours, walking two hours with only occasional "lifting of files and small [inaudible]", only occasional postural limitations on climbing ramps and steps, balancing, stooping,

3

kneeling, crouching and crawling, needing to avoid unprotected heights and limited to performing simple tasks.  (TR 38).  The VE confirmed that his testimony would be consistent with the Dictionary of Occupational Titles (DOT).  (TR 37).  The VE testified that such an individual could not perform Plaintiff's past relevant work.  (TR 38).  Such an individual could, however, perform jobs in final assembly (approximately 2,100; DOT 713.687-018), inspection (approximately 900; DOT 669.687-014) and packaging (approximately 800; DOT 921.687-030).  The VE confirmed that if medical problems resulted in the individual being off task for more than twenty percent of the day, no jobs would be available.  (TR 38).

## IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff met the insured status requirements through June 30, 2010, had not engaged in substantial gainful activity since the January 1, 2008 alleged onset date, and suffers adrenal insufficiency, hypoparathyroidism, premature ovarian failures, osteopenia and arthritis, she does not have an impairment or combination of impairments that meets or equals the Listing of Impairments.  (TR 10-11).  The ALJ found that Plaintiff had the residual functional capacity to perform a limited range of sedentary work further limited to only occasionally lifting files and small tools, occasionally performing postural activities such as climbing, balancing, stooping,  kneeling, crouching and crawling, with no climbing ladders, ropes or scaffolds and needing to avoid unprotected heights, and limited to work requiring simple, routine, repetitive tasks (defined as requiring little judgment and able to be learned in a short period).  (TR 11).  The ALJ found that although Plaintiff is not able to perform her past relevant work, she is able to perform jobs existing in significant numbers in the national economy and therefore she is not suffering from a disability under the Social Security Act.  (TR 17-18).

## V.    LAW AND ANALYSIS

4

A.       **Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

Plaintiff's Social Security disability determination was made in accordance with the five step sequential analysis set forth in 20 C.F.R. sections 404.1520(a)-(g) and 416.920(a)-(g). Plaintiff argues that the ALJ should have found that her impairment met Listing 9.03, the ALJ did not

properly weigh the treating physician's opinion and the ALJ's credibility determination is not supported by substantial evidence.

**B.    Discussion and Analysis**

The Court has reviewed the record in full and substantial evidence exists in the record to support the ALJ's conclusion that Plaintiff has the RFC to perform a limited range of sedentary work[1].

Plaintiff alleges that she should have been found disabled at the third step of the sequential analysis because she satisfied Listing 9.03.  The only evidence which Plaintiff cites to support this allegation is a February 21, 2009 test showing that Plaintiff's calcium was elevated to 11.7H.  (TR 264).

In order to establish disability under the Listings, each requirement of the applicable Listing must be met.  *See* 20 C.F.R. §§ 404.1525(d) and 416.925(d) ("Your impairment(s) cannot meet the criteria of a listing based only on a diagnosis.  To meet the requirements of a listing, you must have a medically determinable impairment(s) that satisfies all of the criteria in the listing."); *see also Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria").

Listing 9.03, 20 C.F.R. Subpt. P, App. 1, under category 9.00 for impairments of the endocrine system, requires hyperparathyroidism with "A. Generalized decalcification of bone on

---

[1] Plaintiff filed a second application for disability on which a favorable decision was made on April 27, 2010 that Plaintiff was disabled as of July 31, 2009.  (Docket no. 14). Plaintiff has not asked for remand pursuant to Sentence Six of 42 U.S.C. § 405(g) and Plaintiff has not met her burden of showing that a remand would be proper pursuant to sentence six of 42 U.S.C. § 405(g).  *See Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 653 (6th Cir. 2009) ("The magistrate judge correctly found that a subsequent favorable decision itself, as opposed to the evidence supporting the subsequent decision, does not constitute new and material evidence under § 405(g).").

appropriate medically acceptable imaging study and elevation of plasma calcium to 11 mg. per

deciliter (100 ml.) or greater or B.  A resulting impairment," evaluated according to the criteria in

the affected body system.  Plaintiff alleges only the single test showing elevation of plasma calcium

to 11 mg. per deciliter and has not alleged a resulting impairment.

As Defendant points out, Plaintiff does not meet all of the criteria.  Plaintiff's diagnosis is

hypoparathyroidism, not hyperparathyroidism.  Next, Plaintiff has not argued and the record does

not show that the condition of elevated calcium was going to last or could be expected to last for a

continuous period of 12 months.  20 C.F.R. 404.1525(c)(4) provides that for some listings a specific

period of time is shown for which the impairment will meet the listing, but "[f]or all others, the

evidence must show that your impairment(s) has lasted or can be expected to last for a continuous

period of at least 12 months."  20 C.F.R. 404.1525(c)(4), 416.925(c)(4); *See also McCoy v. Chater*,

81 F.3d 44, 46 (6th Cir. 1995)..  No other plasma test in the record shows the required elevated

calcium level.  (TR 225, 244, 252, 267).  On February 22, 2009, only one day after Plaintiff showed

the elevated calcium level, Plaintiff's calcium was 8.0 MG/DL.  (TR 267).  The ALJ's decision that

Plaintiff did not meet Listing 9.03 is supported by substantial evidence.

Plaintiff argues that the ALJ did not comply with 20 C.F.R. sections 404.1527(d) and

416.927(d) by failing to give good reasons for assigning reduced weight to the opinions of Plaintiff's

treating physicians.  It is well settled that the opinions and diagnoses of treating physicians are

generally accorded substantial deference.   Under 20 C.F.R. sections 404.1527(d)(2) and

416.927(d)(2), the ALJ must give a treating physician's opinion controlling weight if it is well

supported by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with the other substantial evidence in the case record.   However, dispositive

7

administrative findings relating to the determination of a disability and Plaintiff's RFC are issues reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e).

Plaintiff first identifies Dr. Tae-Hwa Chun (Dr. T. Chun) and his opinion of October 20, 2008. (TR 237-38). Defendant correctly argues that there is no evidence that Dr. T. Chun was a treating physician. Dr. T. Chun saw Plaintiff for evaluation on October 10, 2008 by referral from Dr. Henderson. Dr. T. Chun noted Plaintiff's history that she appeared to suffer from autoimmune polyendocrine syndrome "which led to Addison disease at age 7, hypoparathyroidism at age 5, and premature ovarian failure at age 11." Dr. T. Chun specifically noted that "[n]o laboratory results are available in this visit to review." (TR 238).

On October 20, 2008 Dr. T. Chun wrote a letter to support Plaintiff's application for Social Security Disability Benefits. (TR 240). Dr. T. Chun reported that Plaintiff suffers from autoimmune polyendocrine syndrome type I which results in her suffering "multiple medical conditions, including adrenal insufficiency, hypoparathyroidism, premature ovarian failure and osteopenia." (TR 240). Dr. T. Chun noted that "[d]espite her effort to secure jobs in the past, due to unpredictable loss of muscle strength, syncope, and declining bone density, she was not able to keep her jobs that require some extent of physical activity." (TR 24). "Moreover, her need to maintain extensive medical evaluation and care hinders her from performing as much as expected from her employers." (TR 240).

Plaintiff also cites Palak Choksi, M.D.'s April 2, 2009 letter "to support" Plaintiff's application for benefits. (TR 277). Dr. Choksi's letter adopts Dr. T. Chun's letter in that it is the same. Defendant correctly points out that the record lacks any evidence that Plaintiff was treated, examined or evaluated by Dr. Choksi. The ALJ did not err in failing to assign this opinion controlling weight. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (finding

8

that a single examination including prescription of medication "fail[ed] to evince the type of ongoing treatment relationship contemplated by the plain text of the regulation". "In the absence of treating-source status for these doctors," the court did not reach the question of whether the ALJ erred "by failing to give reasons for not accepting their reports.").

In this instance, the ALJ both considered Dr. T. Chun's and Dr. Choksi's opinions and fully explained why he did not give them controlling weight. The ALJ considered the length of the treatment relationship with each and pointed out that Dr. T. Chun had see Plaintiff for an initial evaluation only one week prior to his October 20, 2008 opinion. The ALJ also considered that Dr. T. Chun's opinion was not supported by objective evidence in the record. The ALJ properly relied on Dr. T. Chun's report only ten days prior that Plaintiff's medications appeared to be "working" for her. (TR 14, 238). Dr. T. Chun noted that the Cortef appeared to be "working" for Plaintiff's Addison disease and when she has a crisis of cortisol deficiency resulting in vomiting, she is able to use Solu-Cortef injections. (TR 238). Dr. T. Chun also noted that Plaintiff's "calcium appeared to be controlled" with calcium and calcitriol. (TR 238). Dr. T. Chun's findings with respect to the medications are consistent with state agency medical consultant Muhammad Mian, M.D.'s May 15, 2008 evaluation of the records and his opinion that Plaintiff's "muscle spasms from hypothyroidism are controlled with pain meds." (TR 228-35).

Dr. T. Chun noted that Plaintiffs was not able to keep her past jobs "that require some extent of physical activity" and the ALJ specifically concurred with the finding that Plaintiff cannot perform her past work and found that she can perform only a limited range of sedentary exertion work. (TR 14). "Under the regulations, 'sedentary work' represents a significantly restricted range of work. Individuals who are limited to no more than sedentary work by their medical impairments have very serious functional limitations." SSR 96-9p,1996 WL 374185 at *3 (S.S.A.). The ALJ

addressed his reasoning to Dr. Choksi's opinion, as well, noting that it duplicated Dr. T. Chun's letter. (TR 15). There is no evidence that Drs. T. Chun and Choksi were treating physicians entitled to controlling weight. Nonetheless, the ALJ properly considered their opinions in full and gave good reasons for the weight he assigned these opinions.

Plaintiff also argues that the ALJ failed to give controlling weight to Dr. Henderson's October 8, 2008 opinion, written on a prescription pad, that Plaintiff "is unable to work secondary to medical problems. She is presently being treated for them. It is unlikely she will be able to work in the near future." (TR 236).

The ALJ considered Dr. Henderson's October 8, 2008 opinion and explained the weight he gave it. (TR 14). The ALJ "is not required to accept a treating physician's conclusory opinion on the ultimate issue of disability." *Maple v. Comm'r of Soc. Sec.*, 14 Fed. Appx. 525, 536 (6th Cir. 2001); *see also* 20 C.F.R. §§ 404.1527(e), 416.927(e). The ALJ also pointed out that Dr. Henderson wrote the note in response to Plaintiff's request for a "letter for student loan stating she can not work." (TR 14, 271). The ALJ found that the opinion was not intrinsically supported by objective or other substantial evidence of record. During the same time period, Dr. Henderson reported that Plaintiff had 5/5 strength in the bilateral upper and lower extremities on July 7, 2008, October 7, 2008, and April 7, 2009. (TR 270, 271, 273). On examination during hospitalization on February 21, 2009, Plaintiff's motor strength remained 5/5 with sensation to touch and pain "preserved" and reflexes 2+ and symmetrical. (TR 261). Plaintiff's gait was described as antalgic in May 2008 yet remained intact after that. (TR 269, 270, 271). Through 2008 and 2009 Plaintiff more often than not retained full range of motion in the cervical and lumbar spine. (TR 268, 269, 270, 271, 272). As Defendant noted in its brief, during this time frame Dr. Henderson also reported at each visit that Plaintiff had improvements since the last visit. (TR 268-73).

10

The ALJ gave good reasons supported by substantial evidence in the record for failing to adopt Dr. Henderson's conclusory October 8, 2008 opinion that Plaintiff was disabled.  Plaintiff has not identified and the transcript does not reveal other record evidence from Dr. Henderson indicating more severe limitations than those set forth in the ALJ's RFC.  The ALJ's exertional limitation to sedentary work, lifting no more than ten pounds, is more restrictive than that reported by Plaintiff.  Plaintiff testified that she can lift up to twenty pounds.  (TR 34-35).  On February 12, 2008 Dr. Henderson noted Plaintiff's report that she is able to lift twenty pounds.  (TR 219).

Plaintiff argues that the ALJ improperly discounted her credibility based on an alleged lack of objective medical evidence.  "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  *Walters*, 127 F.3d at 531.  Credibility assessments are not insulated from judicial review.  Despite deference due, such a determination must nevertheless be supported by substantial evidence and contain specific reasons for the weight the adjudicator assigned to the individual's statements.  *See id.*; SSR 96-7p.

To the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements."  20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).  In addition to objective medical evidence, the ALJ must consider all the evidence of record in making his credibility determination.  *See* 20 C.F.R. §§ 404.1529(c)(2), (3), 416.929(c)(2); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994).

In his decision the ALJ pointed out that Plaintiff's physicians reported that medication was "working" or "controlling" her conditions.  (TR 14).  On March 24, 2008 Dr. Henderson reported that Plaintiff's pain remained "about the same" but Methadone helped.  (TR 268).  On July 7, 2008 Dr. Henderson noted that Plaintiff reported "worse" pain than the previous visit, yet injection helped.  (TR 270). On January 7, 2009 Dr. Henderson noted Plaintiff's report that she had not had any migraines since the prior appointment and her Lyrica and Methadone continued to work although she occasionally took an extra dose of each.  (TR 272).

The ALJ pointed out that despite clinical findings of numbness and tingling in the hands and feet the medical records do not evidence EMG findings of nerve damage.  (TR 14, 16).  Nonetheless, the ALJ addressed numbness in the hands and feet and a history of seizures by limiting Plaintiff to no exposure to unprotected heights and only occasionally performing postural activities.  (TR 11, 16).

The ALJ did not limit his analysis to the objective medical evidence and properly considered the record in full and gave specific reasons for discounting Plaintiff's testimony.   The ALJ considered the extent of Plaintiff's treatment history.  Plaintiff treated with Dr. Henderson seven times between February 5, 2008 and the June 1, 2009 hearing.  (TR 219, 268-73).  She treated with Dr. T. Chun at most twice during the relevant period, one record from an examination and one letter indicating Dr. T. Chun's opinion of her conditions.  (TR 238-40).

The record shows that Plaintiff had three emergency room visits prior to the June 1, 2009 hearing: February 1, 2007, January 16, 2009 and February 21, 2009.  (TR 183-94, 249-67).  The February 2007 visit resulted after Plaintiff ran out of Rocatrol for several days and became hypocalcemic.  (TR 186).   The records show that Plaintiff had not been taking her calcium supplements due to insurance problems.  (TR 186).  On one of the three occasions Plaintiff was

12

discharged the same day and not kept overnight as with the other dates. (TR 249-51). The ALJ did not err in considering the state agency reports in weighing Plaintiff's credibility, despite assigning reduced weight to Dr. Mian's report that Plaintiff could perform medium exertion work defined as lifting no more than 50 pounds occasionally and 25 pounds frequently. (TR 228).

The ALJ also considered the lack of significant side-effects from Plaintiff's medication and exacerbating factors to Plaintiff's symptoms and found a severely restrictive RFC to address her limitations. (TR 17). The ALJ reduced the weight Plaintiff could lift to sedentary exertion to address claims that her symptomatology may be exacerbated and she could become unduly fatigued. (TR 16).

Plaintiff argues that the ALJ improperly applied the "sit and squirm test" when he noted that he observed that Plaintiff was "not in any obvious pain or discomfort when walking in or out of the hearing room or while sitting during the course of the hearing." (TR 17); *Weaver v. Sec'y of Health and Human Servs.*, 722 F.2d 310, 312 (6th Cir. 1983) (The ALJ discounted Plaintiff's pain "solely on the basis of his own observation of Weaver at the hearing," applying the "infamous and thoroughly discredited 'sit and squirm' test." "The ALJ must cite *some* other evidence for denying a claim for pain in addition to personal observation."). This case does not demonstrate application of the discredited "sit and squirm" test. On the contrary, the ALJ properly considered a range of evidence in finding that Plaintiff's statements regarding the intensity, persistence and limiting effects of her pain and other symptoms were less than credible. *See Johnson v. Comm'r*, 2000 WL 332059 at *4 (6th Cir. Mar. 22, 2000) ("The ALJ's personal observation was one of several factors, not the sole factor, in determining that Plaintiff's pain was not disabling."). The ALJ's credibility finding is supported by substantial evidence.

13

In a hypothetical question posed to the VE, an ALJ is required to incorporate only those limitations which he finds credible and supported by the record and the ALJ did so. *See Casey v. Sec'y of Health and Human Servs.,* 987 F.2d 1230, 1235 (6th Cir. 1993). The ALJ's RFC is supported by substantial evidence. The ALJ's hypothetical question to the VE incorporated Plaintiff's limitations which the ALJ found supported by the record and credible and the VE's testimony is substantial evidence supporting the ALJ's finding that Plaintiff could perform a significant number of jobs in the economy. The ALJ's decision at step five is based on substantial evidence.

## VI.   CONCLUSION

The Court has considered the record in full and notes that "[i]t is the exceptionally rare case in which 'every piece of evidence points incontrovertibly towards a decision to deny benefits.'" *See Flagg v. Comm'r of Soc. Sec.*, 2002 WL 373466, at *1 (E.D. Mich. Feb. 19, 2002). The ALJ's decision is supported by substantial evidence, it was within the range of discretion allowed by law and there is insufficient evidence for the undersigned to find otherwise. Plaintiff's Motion for Summary Judgment (docket no. 14) should be DENIED, Defendant's Motion for Summary Judgment (docket nos. 16) should be GRANTED and the instant Complaint DISMISSED.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not

14

preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the  *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: May 11, 2011          s/ Mona K. Majzoub
                             MONA K. MAJZOUB
                             UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: May 11, 2011          s/ Lisa C. Bartlett
                             Case Manager

15